```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 2 9 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SARAH BAEZ,

            Plaintiff,

–v–

THE STATE OF NEW YORK et al.,

            Defendants.

---

12-cv-8229 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Sarah Baez, proceeding *pro se*, brings this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, alleging illegal discrimination and retaliation by her employer, the State of New York and the New York State Office of Temporary and Disability Assistance (OTDA). Defendants have filed a motion to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 46. For the following reasons, that motion is GRANTED.

    I.    **Background**

For the purposes of this motion, the Court accepts as true the factual allegations in the Second Amended Complaint of November 8, 2013. Plaintiff is a sixty-year-old female of Puerto Rican descent. Compl. ¶ 3 (Dkt. No. 52). She was hired by Defendant OTDA to the position of "Disability Analyst 1 Spanish Speaking" in 1979, and in 2001 she was "upgraded" to Disability Analyst 2 after the level-1 position ceased to exist. *Id.* ¶ 18. She remained in that position until she was suspended with a demand for her termination on January 4, 2013, after which she retired. *Id.* ¶¶ 27, 32.

1

During the course of her employment, Plaintiff was diagnosed with a series of debilitating ailments that made it difficult for her to perform her job; these ailments either manifested or worsened after 2000. *Id.* ¶¶ 21-26, 32. These health problems included lower back degenerative disease and cervical spine degenerative disease, *id.* ¶ 22; upper extremity neuropathy and arthritis, *id.* ¶ 23; carpal tunnel syndrome, *id.* ¶ 24; migraine headaches involving visual disturbance, pain, and aura, *id.* ¶ 25; and glaucoma, *id.* ¶ 26.

Plaintiff requested a series of accommodations for these ailments, with several examples listed in the Complaint. She asked for voice recognition software in 2001, and her request was denied until 2002 when she pointed out that other employees had been given the software without a medical need. *Id.* ¶ 32. On other occasions, she was denied requests for replacement of a broken electronic stapler, reassignment of her work space away from a hostile male coworker due to her anxiety, a flat screen computer monitor, and movement to another, more dimly lit workspace to lessen her migraines. *Id.* ¶¶ 32-49. Her supervisors also refused to let her remove a second monitor at her workstation to clear up desk space and store files in a filing a cabinet located behind her workspace. *Id.* ¶¶ 50-59. When she did not receive a satisfactory outcome on this last request, she contacted the New York State Public Employee Safety and Health Bureau, which sent investigators to visit her workspace on November 18, 2010, but subsequently reached a decision unfavorable to her. *Id.* ¶¶ 62, 64. Five days after the investigation, Plaintiff was given a notice of discipline demanding her termination. *Id.* ¶ 63.

In 1994 or 1995,[1] Plaintiff brought a federal lawsuit against Defendants alleging discrimination in their failure to promote Hispanic employees and retaliation for bringing it to Defendants' attention. *Id.* ¶¶ 28-29, 84. That lawsuit settled. *Id.* ¶ 30. In 2008, Plaintiff began

---

[1] In Plaintiff's employment discrimination action filed in New York state court, the court identified the year this first federal lawsuit was filed as 1992. *See* Dkt. No. 62-2 at 18.

2

applying for a promotion to "Disability Analyst 3" and "Disability Analyst 3 Spanish Language" positions, but was not promoted that year, nor when she repeatedly applied in 2010, 2011, and 2012. *Id.* ¶¶ 65, 79, 91-98, 101. She took the promotional examination in June 2010, and received a score of "90." *Id.* ¶¶ 81-82. In August 2012, she was interviewed for a level-3 position, but was told she scored only 2 out of 3 on the Spanish proficiency examination, although she was not permitted to see the results. *Id.* ¶¶ 101-05. She alleges that she was similarly situated to the candidates who got the promotions, in the sense that she was a Disability Analyst 2 when applying, had passed a competitive civil service examination for her current position, and passed an oral examination in Spanish. *Id.* ¶ 68. She maintains that she was more highly qualified than these other candidates, however, because of her years of experience, her high rate of decisional accuracy, and positive comments from co-workers. *Id.* ¶¶ 69-71. Based on her performance, she was asked to train new level-2 Disability Analysts in 1998. *Id.* ¶ 99.

Instead of being promoted, Plaintiff says she was discriminated and retaliated against by placement on a "Medical Assistance Aid to the Disabled" project team, which she alleges was an assignment reserved for "older workers" seen as "incompetent or problematic." *Id.* ¶ 77. Even with this assignment, Plaintiff retained her position of Disability Analyst 2, pay grade, and seniority during this time frame. *Id.* ¶ 77. The unit was reassigned to evaluating Continuing Disability Review claims in 2009, but remained in the same location with the same personnel. *Id.* ¶ 78. That unit was disbanded while Plaintiff was suspended in the summer of 2012, but upon her return, she was assigned back to the unit as its sole member. *Id.*

Plaintiff alleges that as of April 2009, of 124 Disability Analyst 3 positions, only one "generic" (that is, non-Spanish language) position was occupied by a Hispanic employee. *Id.* ¶ 85. Five Hispanic employees were in Disability Analyst 3 Spanish Language positions, three

3

of them for "many years," and two promoted in 2008, allegedly because of Plaintiff's complaints. *Id.* ¶ 86. Both of those employees scored in the 70's on the promotion examination, compared to Plaintiff's 90. *Id.* ¶¶ 19, 90. In 2011, out of 544 Disability Analyst 2s, 29 were Hispanic, and out of 135 Disability Analyst 3s, there was one Hispanic employee in a "generic" position and three in Spanish Language positions. *Id.* ¶ 88.

In 2010, Plaintiff filed an action in New York state court alleging a pattern or practice of discriminatory and retaliatory acts against her between 2000 and 2009. *Id.* ¶ 111. Beginning in August 2010, she began to receive a series of disciplinary notices, including ones on August 4, 2010; November 23, 2010; May 4, 2011; April 2, 2012; and January 11, 2013. *Id.* ¶ 113. The first of these notices "demanded" that Plaintiff be suspended without pay, and the rest "demanded" her termination. *Id.* ¶ 114. These notices charged Plaintiff with insubordination for not performing her job, and were accompanied by representations to a labor arbitrator that the office had given Plaintiff every reasonable accommodation for which she had asked. *Id.* ¶¶ 116-20. On January 4, 2013—the last day Plaintiff worked for Defendants—she was given a notice of immediate suspension and escorted from the building, and a week later was informed that it was for insubordination in failing to follow directions and failure to manager her caseload. *Id.* ¶¶ 121-25. She claims the Defendants falsely represented the she had more than the average number of open cases and that she had breached the confidentiality of clients, and that she had not been receiving new cases for seven weeks. *Id.* ¶¶ 123-35.

Plaintiff's final allegation is that Defendants denied her the opportunity to work overtime that it offered to other level 2 Disability Analysts. She claims that after she was placed in the aforementioned Medical Assistance Aid to the Disabled unit for discriminatory and retaliatory reasons, she was repeatedly denied opportunities for overtime and to transfer out of the unit, and

was told that overtime work was not permitted in that unit. *Id.* ¶¶ 145-151. Analysts doing standard Social Security Administration processing were permitted such overtime. *Id.* ¶¶ 147, 151. After the Medical Assistance unit was disbanded and Plaintiff returned to Social Security Administration work, she was told she could not take overtime because she was being assigned to fewer cases than other analysts, and was told she could not transfer to other types of work. *Id.* ¶¶ 155-59. On another occasion, when an email was sent to all analysts offering overtime, Plaintiff was told she could not participate because her performance evaluation was unsatisfactory. *Id.* ¶¶ 162-64.

## II.     Abstention

Defendants first contend that the Court should abstain from hearing this case because of a pending state action brought by Plaintiff. They argue that abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), is applicable. The Court disagrees.

### A. Legal Standard

Federal courts have a "virtually unflagging" obligation to hear cases within their jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)). The abstention doctrines recognized by the Supreme Court provide an "extraordinary and narrow exception" to this rule for situations where requiring the parties to litigate only in state court "would clearly serve an important countervailing interest" to this obligation to decide the case before the court. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). *Colorado River* abstention may apply "in situations involving the contemporaneous exercise of concurrent jurisdictions" by

federal and state courts, when abstaining from federal jurisdiction would serve the interests of "conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817.

For *Colorado River* abstention to be appropriate, the federal and state litigation must first be parallel, in the sense that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (quoting *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988)); *see also Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."). If there are parallel proceedings, the court then weighs six factors to determine whether to abstain under the *Colorado River* doctrine:

> (1) the assumption of jurisdiction by either court over any res or property,
> (2) the inconvenience of the federal forum,
> (3) the avoidance of piecemeal litigation, ...
> (4) the order in which jurisdiction was obtained. ...
> (5) whether state or federal law supplies the rule of decision, and
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996). These factors are not a "mechanical checklist," but are to be balanced in light of the specific nature of the case, with the scale heavily weighted in favor of the exercise of jurisdiction from the outset of the analysis. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989).

### B. Analysis

There can be no *Colorado River* abstention if Plaintiff's federal and state actions are not parallel. Plaintiff, with the assistance of counsel, filed the Complaint in her state-court suit on

April 2, 2010. *See Baez v. State of New York et al.*, Index No. 110301/09 (N.Y. Sup. Ct. Apr. 2, 2010). That case involves the same parties that are before the Court in this lawsuit, and involves almost the exact same factual allegations (although developed with some additional detail), although the allegations end in 2009 rather than 2013. *See* Dkt. No. 62-1. That complaint alleges discrimination against Plaintiff on the basis of her race, national origin, and age, as well as disability discrimination and failure to accommodate, under New York State Human Rights Law, N.Y. Exec. Law § 296.

The New York Supreme Court dismissed the majority of Plaintiff's state complaint on November 9, 2010. *See* Dkt. No. 62-2. The court found that all of Plaintiff's allegations from before July 2006 were time-barred by New York's three-year statute of limitations for employment discrimination suits, and that she had failed to state a claim that Defendants had created a hostile work environment. *Id.* It further dismissed her retaliation claim as too remote in time from any protected action, and her age discrimination claim as conclusory. *Id.* However, the court denied Defendants' motion to dismiss Plaintiff's disability discrimination claim, *id.*, which is now the subject of a fully submitted motion for summary judgment in the state court. *See* Dkt. No. 85 (Status Letter).

At first blush, Plaintiff's federal claims bear so many similarities to those in her state suit that a finding of parallel litigation would seem to follow. Many of Plaintiff's factual allegations in this case are duplicative of her state complaint, and both suits state claims of national origin discrimination, retaliation, and failure to provide reasonable accommodations against the State of New York and the Office of Disability and Temporary Assistance. *See* Compl. ¶¶ 167-83. Moreover, in addition to her federal causes of action, Plaintiff includes in her federal complaint the same state causes of action that she pleaded in state court—that is, violations of the New York State Human Rights law.

Nevertheless, Plaintiff's state suit and her federal suit contrast in one particularly important way: this suit was filed 2013, after several intervening alleged acts of discrimination by the Defendants, whereas the state suit was filed in 2010. The bulk of Plaintiff's state-law

claims had been dismissed by November 9, 2010, before several of the key events alleged by Plaintiff in her federal complaint, including: denied applications to the Disability Analyst 3 position in 2010, 2011, and 2012, Compl. ¶ 79; her August 2012 interview for the same position and Spanish proficiency examination, *id.* ¶¶ 101-05; the inspection of her workspace by the Public Employee Safety and Health Bureau on November 18, 2010 and the subsequent unfavorable decision, *id.* ¶¶ 62, 64; her suspension in 2012 and placement as the sole member of the Medical Assistance Aid to the Disabled team, *id.* ¶ 78; and most importantly for her retaliation claim, the disciplinary action occurring after her filing of the state claim, *id.* ¶¶ 111, 113, 116-20. Her final suspension and resignation occurred in this time period as well.

It would be odd to conclude that "wise judicial administration" required closing the federal courthouse to Plaintiff's later allegations of workplace discrimination merely because different, earlier allegations were filed in state court. To be sure, Plaintiff repeats the facts underlying her state claim in her federal complaint; to the extent those claims could form part of this case, a stay until the resolution of her state lawsuit might be prudent. But all of Plaintiff's pre-2010 allegations would be time-barred. *See* discussion *infra*. That means there is no chance that this suit will require re-litigation of the issues already decided or still under consideration in the state suit, and thus the two suits (though they involve similar theories) do not touch on the same subject matter. The suits are not parallel, so *Colorado River* abstention ought not apply.

Defendants argue that the suits should be considered parallel despite the disparate timeframes of the underlying events because Plaintiff could have amended her state complaint to include the facts that now form the basis of her federal claims. Amendments to pleadings offered more than 20 days after service of the complaint require leave of the court or the stipulation of all parties in New York. *See* N.Y. CPLR 3025. This possibility is not enough to overcome "the presumption ... in favor of the federal court's retaining jurisdiction, not yielding it." *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989). Indeed, a plaintiff generally "has no continuing obligation to file amendments to the complaint to stay abreast of subsequent

8

events; plaintiff may simply bring a later suit on those later-arising claims." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (discussing application of *res judicata*).

Even if the proceedings were parallel, the bare fact of parallel litigation is not enough to make abstention appropriate. *See Gregory v. Daly*, 243 F.3d 687, 702 (2d Cir. 2001). There would also have to be "exceptional circumstances," for example "the danger of conflicting remedies or a party's initiation of a second suit after receiving a preliminary adverse ruling on the merits in the first suit." *Id.* As explained above, Plaintiff's inability to plead timely claims that overlap with her state suit mean that there is no threat of conflicting remedies, and that this is not a case of a plaintiff invoking federal jurisdiction solely because she received an adverse ruling based on the same facts in state court.

Plaintiff's only allegation that raises a concern in that regard is her hostile work environment claim. Such claims are based on a continuing course of conduct, and (as explained below) are timely as long as one event in the course of conduct underlying the allegation took place within the period to file a discrimination or retaliation charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Accordingly, some of Plaintiff's pre-2011 allegations could for the basis both for her previous unsuccessful hostile work environment claim, and for the one alleged in this action. The Court is aware of the concern this raises that Plaintiff has alighted to the federal forum only after an adverse ruling on the same claim in state court, but two factors counsel against making that concern determinative here. First, again, is the existence of a significant number of allegations in the Complaint post-dating the state court's judgment. Second is the existence of other principles, such as *res judicata*, to prevent relitigation of claims that have already proven unsuccessfully. Those principles, rather than abstention, are the better way to deal with any chance of conflicting judgments here. Abstention under the *Colorado River* doctrine is not warranted.

### III. Eleventh Amendment

The Eleventh Amendment bars suits against a state brought by a private citizen in federal court unless the state consents, or Congress has abrogated the state's sovereign immunity with regard to the specific claim at issue. *See* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Furthermore, "[a]n official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). OTDA is an "arm of the state" for Eleventh Amendment purposes. *Cincotta v. N.Y.C. Human Res. Admin.*, No. 00-cv-9064 (JGK), 2001 WL 897176, at *9 (S.D.N.Y. Aug. 9, 2001); *McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*, No. 12-cv-3852 (JFB) (ETB), 2013 WL 4780954, at *1 (E.D.N.Y. Sept. 5, 2013).

Because Plaintiff's suit alleges discrimination in employment on the basis of her disability, it arises under Title I of the ADA. *See* 42 U.S.C. § 12112(a). The Supreme Court has held that Congress did not validly abrogate the states' sovereign immunity to suits for money damages when it passed Title I. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). Although Title II of the ADA does, at least in some applications, validly abrogate the states' sovereign immunity, *see Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004), that title of the statute applies only to discrimination in the "provision or operation of public services, programs, or activities," *id.* at 517; 42 U.S.C. § 12132. Accordingly, Plaintiff's ADA claims must be dismissed for lack of subject-matter jurisdiction. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996) (suits "must be dismissed for a lack of jurisdiction" when state is immune).

Meanwhile, New York has not consented to be sued in federal court under its human rights laws. *See Pennhurst*, 465 U.S. at 99; *Sulehria v. New York*, No. 12-cv-21 (LEK/ATB), 2012 U.S. Dist. LEXIS 148666 at *4 (S.D.N.Y. Sept. 17, 2012); *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009). All claims brought by Plaintiff under these laws must be dismissed as well.

Congress has abrogated the states' sovereign immunity for claims under Title VII, so the Eleventh Amendment does not bar Plaintiff's claims under that statute. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976).

## IV.     Timeliness

Filing a timely complaint with the Equal Opportunity Employment Commission ("EEOC") is a precondition to bringing a lawsuit under Title VII. 42 U.S.C. § 2000e-5(f)(1); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). An EEOC charge, in turn, must be filed within 180 days of when the alleged unlawful employment practice occurred, unless the complainant first files a complaint with a state or local agency for the same practice, in which case the EEOC charge must be filed within 300 days. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

According to the Complaint, Plaintiff filed a charge with the EEOC on May 30, 2012. *See* Compl. ¶ 12. The Defendants argue that the EEOC charge was filed on April 30, 2012, but the Court will accept Plaintiff's allegation for the purpose of evaluating the 12(b)(6) motion. Although the Court has not been made aware that a complaint with a state or local agency was filed, the Court will accept Defendants' suggestion to apply the more generous 300-day filing deadline, *see* Def't Mem. Supp. Mot. Dismiss at 16 (Dkt. No. 61), particularly because the exhaustion requirement is waivable and not a jurisdictional prerequisite. *See Francis v. City of New York*, 235 F.3d 763, 766-67 (2d Cir. 2000). Accordingly, all allegations from July 5, 2011 onward are timely, and any allegations from before that date are untimely.

Plaintiff's allegations of discrimination are based on the incidents of failure to promote, failure to reassign Plaintiff to her original unit and instead keeping her in the Medical Assistance Aid to the Disabled unit, assigning her to "lower level" positions, failing to provide reasonable accommodations, suspending her, and denying her overtime. Compl. ¶ 171. The only allegedly discriminatory acts occurring after July 5, 2011 were: failure to promote to Disability Analyst 3 on March 8, 2012, Compl. ¶ 96; Plaintiff's four-month suspension without pay on March 9, 2012, *id.* ¶ 97; Plaintiff's assignment as the sole member of the Medical Assistance Aid to the

Disabled unit upon her return from suspension in July 10, 2012, *id.* ¶ 78; failure to promote in August 2012, *id.* ¶ 106; notices of discipline on April 2, 2012 and January 11, 2013, *id.* ¶ 113; her suspension on January 4, 2013, *id.* ¶ 123; refusal to transfer Plaintiff out of her unit on November 30, 2011, and denial of the opportunity for overtime on July 31, 2012, *id.* ¶¶ 158, 162-64. All of Plaintiff's others allegations are time-barred.

Unlike her discrimination claims, Plaintiff pleaded her retaliation claim under a hostile work environment theory dating back to 1994. *See* Compl. ¶ 174. For the purpose of determining whether a hostile work environment claim was timely filed, "[i]t does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 117. It is enough that "an act contributing to the claim occurs within the filing period" to allow a court to consider the entire period of the alleged hostile environment. *Id.* Defendants do not argue that Plaintiff's retaliation claim is time-barred. *See* Def.'s Mem. Supp. Mot. Dismiss at 15-17 (Dkt. No. 61) (discussing only discrimination claims). Accordingly, Plaintiff's retaliation claim under Title VII is also timely.

## V. Failure to State a Claim

### A. Legal Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Although factual allegations are therefore afforded a presumption of truth, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

To state a claim of national origin discrimination under Title VII, Plaintiff must plead facts showing that she suffered an "adverse employment action" based on her national origin. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). A plaintiff can survive a motion to dismiss by pleading facts "that would create an inference that any adverse action taken by any defendant was based upon her" national origin. *Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (citing *Patane*, 508 F.3d at 112). Circumstances that can constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (quoting *Galabaya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)) (quotation marks omitted) (alteration in original).

Defendants state that "the Second Circuit has not yet resolved the question of whether a plaintiff alleging Title VII discrimination must plead a *prima facie* case" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Def.'s Mem. Supp. Mot. Dismiss at 18 (Dkt. No. 61). But in *Swierkiewicz v. Sorema N. A.*, the Supreme Court made clear that "[t]he prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007) (explaining *Swierkiewicz* was consistent with that holding); *Brown v. Daikin America Inc.*, 756 F.3d 219, 228-29 (2d Cir. 2014) (expressing skepticism at claim that question is unsettled in Second Circuit in light of *Swierkiewicz*). Accordingly, while a complaint alleging facts that would satisfy the *McDonnell Douglas* standard for a *prima facie* case would survive a motion to dismiss, it is not necessary to do so as long as the plaintiff plausibly alleges facts that would give rise to an inference of unlawful discrimination.

To state a Title VII claim for retaliation, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between

13

the protected activity and the adverse action." Patane, 508 F.3d at 115 (citing *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004)). A "protected activity" is an action taken "to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *overruled on other grounds by Swierkiewicz*, 534 U.S. at 510. "In assessing whether a plaintiff has established that an adverse employment action was motivated by discriminatory retaliation, 'there are two distinct ways for a plaintiff to prevail—either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 129 (2d Cir. 2013) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Title VII's anti-retaliation provisions are broader than its antidiscrimination provisions, and cover employer conduct that might not constitute a change in the "terms and conditions of employment" necessary to state a discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). "[A]ny action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination' could constitute retaliation." *Patane*, 508 F.3d at 116 (quoting *Burlington Northern*, 548 U.S. at 57).

### B. Discussion

Plaintiff alleges several adverse employment actions sufficient to underlie a discrimination claim, but her Complaint fails to state a claim related to these actions because it does not give rise to a plausible inference that the reason for these actions was her national origin. As explained above, Plaintiff can state timely Title VII claims based on the following alleged adverse employment actions: failure to promote to Disability Analyst 3 after she interviewed on March 8, 2012, Compl. ¶¶ 96, 98; Plaintiff's four-month suspension without pay on March 9, 2012, *id.* ¶ 97; Plaintiff's assignment as the sole member of the Medical Assistance Aid to the Disabled unit upon her return from suspension in July 10, 2012, *id.* ¶ 78; failure to promote in August 2012, *id.* ¶ 106; notices of discipline on April 2, 2012 and January 11, 2013, *id.* ¶ 113; her suspension on January 4, 2013, *id.* ¶ 123; refusal to transfer Plaintiff out of her unit

14

on November 30, 2011, and denial of the opportunity for overtime on July 31, 2012, *id.* ¶¶ 158, 162-64.

Regarding the failures to promote in March and August 2012, Plaintiff alleges that the individuals who received the promotions to Disability Analyst 3 (either in English-language or Spanish-language positions) were generally less qualified than she was, scored worse on the promotion examination, and had less seniority. Compl. ¶¶ 69, 99, 100, 108, 110. Plaintiff also states that her Spanish language proficiency was higher than the individual chosen for the Disability Analyst 3-Spanish Language position in August 2012, and though Plaintiff scored a two out of three on the Spanish proficiency examination, the allegations construed liberally implied that this result was falsified. *Id.* ¶¶ 101-05, 109.

Even if the allegations that Plaintiff was the most qualified individual for the job were to prove true, that would not be enough to state a claim under Title VII. The statute does not require employers to hire the most qualified candidate out of all applicants, but rather that the choice of a candidate to fill the job was not based on illegal discrimination. *See Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981). There must be something in the allegations to raise an inference that the reason Plaintiff was not promoted was her national origin. While being passed over for candidates with lesser qualifications can contribute to such an inference, *see Burdine*, 450 U.S. at 259, in the circumstances of this case this allegation alone does not give rise to that inference, first and foremost because the Complaint contains no allegations that Plaintiff was passed over for promotions in favor of individuals outside of her protected class. As Plaintiff explains in her response to the motion to dismiss, Defendants promoted six individuals who allegedly scored lower on the promotion examination than Plaintiff to the position of Disability Analyst 3— Spanish Language positions. *See* Pl.'s Resp. to Mot. to Dismiss at 17 (Dkt. No. 71). Of those six employees, Plaintiff states that five are of Puerto Rican descent. *Id.* Meanwhile, Plaintiff raises no allegations regarding the national origins of those hired for the generic Disability Analyst 3 positions when she applied; the only allegations in the Complaint that touch on this

matter are the statistics regarding the number of Hispanic Analysts in 2011, but these show little about the hiring decisions made when Plaintiff applied. *See* Compl. ¶ 88. Being passed over for a member of the same protected class tends to make an inference of discrimination on the basis of membership in that class implausible. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013); *DeJesus v. Dist. One Cmty. Educ. Council*, No. 08-cv-10666 (GBD), 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010).

To be sure, Plaintiff brought a lawsuit against her employer in the mid-1990s alleging Defendants' hiring and promotion practices were discriminatory against Hispanic employees, and obtained what the Complaint characterizes as a favorable settlement. *See* Compl. ¶¶ 29-30, 84. The Complaint also contains statistics alleging continuing underrepresentation of Hispanic workers in the Disability Analyst 3 position. *Id.* ¶¶ 85-88. However, Plaintiff also explains that other Hispanic analysts (she does not mention their national origins) who applied for promotions at the same time as her continued to be promoted to Disability Analyst-3 and Disability Analyst-4 positions. *Id.* ¶¶ 86-92. To the extent that successful settlement of a lawsuit alleging racial discrimination nearly twenty years ago raises an inference that Plaintiff was at one time discriminated against on the basis of her national origin (a distinction the Court will elide in service of construing the Complaint liberally), it does not on its own continue to raise that inference after such a significant passage of time when there is a lack of any other allegations showing national origin discrimination. To hold otherwise would mean that an employee who settles a discrimination suit with an employer could continuously subject that employer to plausible claims of discrimination based on any subsequent adverse employment action. There is no reason this should be so.

There is a similar lack of allegations of plausible allegations of national origin discrimination surrounding the other adverse employment actions Plaintiff suffered. There is no direct evidence of animus (such as discriminatory statements) on the part of the decision-makers responsible for the disciplinary notices, suspensions, assignment to an allegedly lower-status unit

16

and refusal to transfer Plaintiff away from that unit, or refusal to schedule Plaintiff for overtime. Nor is there any evidence that would lead to an inference that these actions were taken on the basis of Plaintiff's Puerto Rican national origin. With regard to each adverse actions, there is no allegation that similarly situated individuals not of Plaintiff's protected class were treated differently. Indeed, there is no allegation linking Plaintiff's national origin to these actions at all, other than ones stated in conclusory and implausible terms. Plaintiff's allegations of discrimination must therefore be dismissed.

Plaintiff's allegations of unlawful retaliation stand on different footing. She pleads her retaliation claim on the theory of hostile work environment, but construing this allegation liberally in light of Plaintiff's *pro se* status, it seems more accurate to say that Plaintiff is alleging that Defendants undertook a retaliatory "course of conduct" against her. *See Rivera v. Rochester Genesee Reg'l Transp. Dep't*, 743 F.3d 11, 25 (2d Cir. 2012) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)). Plaintiff filed two previous lawsuits that could serve as the basis for a claim of illegal retaliation, one in federal court in or around 1994 and one in 2010.

The passage of time since Plaintiff's 1994 would make any finding of retaliation unlikely. With the exception of Plaintiff's placement on the Medical Assistance Aid to the Disabled team in 2002, *see* Compl. ¶ 77, all of Plaintiff's allegations not related to alleged disabilities are from 2008 or later (and the bulk are from after 2010). Even if Plaintiff's requests for disability accommodations can be considered part of a "hostile work environment" created by Defendants, her earliest allegation relating such accommodations is from September 2000, six years after she filed the suit and a year after it settled. That gap in time is too much to raise an inference of retaliation. *See, e.g., Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999).

Plaintiff pleaded three causes of action in her state lawsuit filed on April 10, 2010: disability discrimination, age discrimination, and retaliation based on her 1994 lawsuit. *See* Dkt. No. 62-1 at 16-19. Filing a lawsuit alleging age discrimination and disability discrimination is

17

not a protected activity under Title VII, because that statute protects employees against retaliation only for opposing a "practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Neither age nor disability is protected by Title VII, and Plaintiff's ADA claim is barred by the Eleventh Amendment, as discussed above. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 111 (S.D.N.Y. 2012) ("[A] complaint about disability-related discrimination cannot form the basis of a retaliation claim under Title VII.").

However, retaliation against an employee for opposing discrimination is an unlawful employment practice under Title VII, so under the terms of Title VII a Plaintiff is protected for opposing retaliation against her for filing a retaliation suit. Given that the filing of this suit occurred so long before Plaintiff filed her EEOC charge, however, the only way for her to state a timely claim for retaliation based on that lawsuit is to show a continuing violation. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1330-31 (2011). However, even that doctrine applies only to "specific discriminatory policies or mechanisms," and "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert*, 10 F.3d at 53. Here, there are allegations that Plaintiff was retaliated against several times through the use of notices of discipline and failure to promote, but there is no fair inference that these actions were the result of a continuing policy on the part of Defendants. Moreover, Plaintiff's treatment following initiation of her state suit does not rise to the level of creating a hostile work environment, which requires a showing that harassment was so "severe and pervasive" that it altered the conditions of her employment and created an "abusive working environment," and that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). While Plaintiff complains of unfair treatment, her allegations do not plausibly demonstrate this sort of abuse and harassment.

In their filings in support of and in opposition to the motion to dismiss, both Defendants and Plaintiff raise the possibility that the EEOC charge underlying this case could be construed as another protected action based on which Plaintiff could claim retaliation. *See* Def.'s Mem. Supp. Mot. Dismiss at 26 (Dkt. No. 61); Pl.'s Resp. to Mot. to Dismiss at 13 (Dkt. No. 71). In the first instance, Plaintiff has not filed an EEOC charge based on any events that have occurred since her previous EEOC charge, so this claim is not administratively exhausted. Regardless, Defendants correctly argue that Plaintiff did not allege retaliation based on that EEOC charge in her Complaint. Even giving the Complaint a liberal construction in light of Plaintiff's *pro se* status, the only protected activities on which she bases her retaliation charges are her federal lawsuits. Plaintiff cannot amend her Complaint in her opposition to a motion to dismiss. *See Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (citing *O'Brien v. Nat'l Prop. Analyst Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). Plaintiff's retaliation claim must therefore be dismissed.

## VI.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is GRANTED.

This resolves Dkt. No. 60. Docket No. 46 is administratively denied as moot. The Clerk is requested to terminate the case.

SO ORDERED.

Dated: Sept. 29, 2014
New York, New York

ALISON J. NATHAN
United States District Judge